FILED
2021 Feb-08  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| DAX JONATHAN STIEFEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-01540-SGC |
| | ) | |
| ROBERT K. MALONE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER[1]

This is a personal injury action arising out of a motor vehicle accident. Pending before the undersigned are two motions to strike and a motion for partial summary judgment filed by defendants Robert K. Malone ("Malone") and Greenwood Motor Lines, Inc., d/b/a R+L Carriers ("Greenwood"). (Docs. 74, 78, 84).

## I.    Background

Benjamin Bradford Laney ("Laney") and Dax Jonathan Stiefel ("Stiefel") commenced this action in the Circuit Court of DeKalb County, Alabama, and defendants Malone and Greenwood timely removed it to this federal district court.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 17).

(Doc. 1).[2]  Gerald Don Laney, d/b/a Laney Electric, Limited Liability Company ("Laney Electric"), was added as a plaintiff after removal.  (Doc. 31).  The plaintiffs' negligent hiring, training, supervision, and entrustment claims have been dismissed as lacking facial plausibility, and all remaining claims asserted by Laney and Laney Electric have been dismissed by joint stipulation (Docs. 52, 77).  Accordingly, the only remaining claims are Stiefel's claims against Malone for negligence and wantonness and claims seeking to hold Greenwood liable for Malone's negligence and wantonness on theories of agency and *respondeat superior*.  Malone and Greenwood seek summary judgment only as to Stiefel's wantonness claims against Malone and Greenwood.  (Doc. 78).  These defendants also seek to preclude the admission of opinions offered by Whitney Morgan, who Stiefel designated as a trucking expert, and by H. Randall Griffith, Ph.D., ABPP-CN, regarding Stiefel's cognitive and emotional status (Docs. 74, 84).  For the reasons discussed below, the motion to strike Dr. Griffith's opinions is due to be granted, the motion to strike Morgan's opinions is due to be granted in part and denied in part, and the motion for partial summary judgment is due to be granted.  (Docs. 74, 78, 84).

---

[2] The Cincinnati Insurance Company, Mid-Century Insurance Company, and State Farm Mutual Automobile Insurance Company are named defendants in this action, as well.  They have opted out of participation in its trial.  (Docs. 34, 43).

## II.   Material Facts[3]

The accident at issue occurred during the day of May 17, 2018, on a flat, straight section of Gault Avenue in Fort Payne, Alabama, which has no line-of-sight obstructions.  (Doc. 68-1 at 47; 78-2 at 11; Doc. 78-3 at 2).  Laney and Stiefel were travelling north on Gault Avenue in a 2001 Chevrolet C34 pickup truck (the "pickup truck"); Laney was driving the pickup truck, and Stiefel was riding in the front passenger seat.  (Doc. 78-3 at 2-3).  Malone, who was driving a commercial motor vehicle (the "CMV") in furtherance of Greenwood's business, turned onto Gault Avenue and travelled north for less than one-half of a mile behind the pickup truck. (Doc. 68-1 at 47; Doc. 79 at 3; Doc. 81 at 3).  When the pickup truck slowed or stopped to allow a sedan in front of it to make a right turn off Gault Avenue into the parking lot of a fast-food restaurant, the CMV collided with it.  (Doc. 78-1 at 11; Doc. 79 at 3; Doc. 81 at 3).  Cameras positioned at two nearby businesses captured the accident on video.  (Doc. 82).

In the one minute immediately preceding the accident, the CMV's speed did not exceed the 35-mile-per-hour speed limit.  (Doc. 78-2 at 20).  Stiefel asserts Malone testified he could not recall whether he applied the CMV's brakes at all

---

[3] The following facts pertain to the motion for partial summary judgment and are addressed at this point in the opinion to provide context for the motions to strike.  The facts are undisputed, unless otherwise noted.  They are viewed in the light most favorable to Stiefel, as the non-movant, with Stiefel given the benefit of all reasonable inferences.  Additional facts pertinent to the motions to strike will be discussed in the sections of the opinion addressing those motions.

before impact.  (Doc. 81 at 5).[4]  However, Stiefel's accident reconstruction expert determined Malone did apply the CMV's brakes within one second before impact. (Doc. 78-2 at 12).  At the moment of impact, the CMV was travelling at a speed of 28-to-30 miles per hour, while the pickup truck was travelling at a speed of seven-to-eight miles per hour.  (*Id.* at 20).

Malone testified he was familiar with the section of Gault Avenue where the accident occurred and knew vehicles would have to slow down to turn right into the businesses off the roadway.  (Doc. 68-1 at 10, 46-48).  However, he did not see the sedan turning right off Gault Avenue, observe brake lights or a turn signal on the pickup truck, or realize before the moment of impact he would collide with the pickup truck.  (*Id.* at 50-51, 54).  Instead, he thought the pickup truck was turning into the parking lot of the fast-food restaurant and would be clear of Gault Avenue before the CMV reached it.  (*Id.* at 49).  Malone further testified he did not recall consuming alcohol the evening before the accident, did not consume alcohol and was not fatigued on the morning of the accident, and was not using his cell phone or otherwise distracted at the time of the accident.  (*Id.* at 45, 48-49, 51).

---

[4] Based on a review of Malone's deposition regarding the moments prior to impact, the undersigned questions the accuracy of Stiefel's characterization of the testimony.  (Doc. 68-1 at 49).  Nonetheless, the undersigned credits the characterization for purposes of the pending motion for partial summary judgment.

### III.   Motion to Strike Dr. Griffith's Opinions

Malone and Greenwood seek to preclude the admission of Dr. Griffith's opinions on procedural grounds, pursuant to Rule 26(a)(2) and Rule 37(c)(1) of the *Federal Rules of Civil Procedure*.  Stiefel has failed to submit any response to this request.

Rule 26(a)(2) requires a party to disclose to the other parties the identities of expert witnesses who may testify at trial.  FED. R. CIV. P. 26(a)(2)(A).  In addition to disclosing the experts' identities, a party generally must disclose the experts' written reports, if the experts are retained or specially employed to provide expert testimony.  FED. R. CIV. P. 26(a)(2)(B); *see also Prieto v. Malgor*, 361 F.3d 1313, 1317-18 (11th Cir. 2004) (noting that under Rule 26(a)(2) "[n]otice of the [retained or specially employed] expert witness' name is not enough" but, rather "[e]ach witness must provide a written report [containing specified information]."); *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (" 'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report [containing specified information].") (citing FED. R. CIV. P. 26(a)(2)(B)).  Each such report is required to contain a complete statement of the expert's opinions, the expert's qualifications, a list of all other cases in which the expert has testified in the previous four years, and a statement of the compensation to be paid for the expert's testimony, amongst other

things. FED. R. CIV. P. 26(a)(2)(B). A party must make its expert witness disclosures within the time prescribed by court order. FED. R. CIV. P. 26(a)(2)(D).

"[T]he expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese*, 527 F.3d at 1265 (internal quotation marks omitted). "The rule also seeks to allow for opposing counsel to have an 'opportunity to depose [the disclosed expert], proffer a rebuttal expert, or file a *Daubert* motion.'" *Rondini v. Bunn*, 2020 WL 136858, at *2 (N.D. Ala. Jan. 13, 2020) (quoting *Reyes v. BJ's Rests., Inc.*, 774 F. App'x 514, 517 (11th Cir. 2019)). "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Reese*, 527 F.3d at 1266.

A party's failure to provide its expert disclosures within the time prescribed precludes it from using the expert or his testimony on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. FED. R. CIV. P. 37(c)(1) (providing for sanctions that may be imposed in the alternative or as complements to evidentiary exclusion); *see also OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008) ("Under Rule 37(c)(1), a district court clearly has authority to exclude an expert's testimony where a party

has failed to comply with Rule 26(a) *unless the failure is substantially justified or is harmless*.") (emphasis in original).  " 'The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party.'" *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).  In determining whether a failure to disclose was substantially justified or is harmless, the Eleventh Circuit has instructed courts to consider "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party . . . ." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1321 (11th Cir. 2008)). "A district court has broad discretion to exclude expert testimony when a party fails to comply with its deadlines," *Woodard v. Town of Oakman, Alabama*, 970 F. Supp. 2d 1259, 1267 (N.D. Ala. 2013), and review of a district court's decision whether to exclude expert testimony under Rule 37 as a sanction for a Rule 26 violation is "limited and deferential."  *Mitchell*, 318 F. App'x at 825.

The deadline for Stiefel's expert witness disclosures was January 15, 2020. (Docs. 24, 59).  On that date, Stiefel submitted an "Expert Disclosure Statement" which identified Dr. Griffith as one of several "physicians . . . [who] will testify in accordance with [Stiefel's] medical records and bills regarding [his] knowledge and observations related to [Stiefel's] condition, diagnosis, injury, permanent injury,

treatment, and prognosis." (Doc. 74-1). Based on the description of Dr. Griffith's anticipated testimony and the fact that the other physicians identified in the disclosure were Stiefel's treating providers, defense counsel assumed Dr. Griffith was disclosed as a treating provider rather than an expert witness. (Docs. 74, Doc. 74-2). On May 6, 2020, defense counsel requested clarification regarding Dr. Griffith's role in this litigation because Stiefel had not previously identified Dr. Griffith as on one of his treating providers in his interrogatory responses or deposition testimony. (Doc. 74-2). Stiefel's counsel did not respond to the inquiry. (Doc. 74). Following the futile attempt to obtain clarification as to Dr. Griffith from Stiefel's counsel, defense counsel subpoenaed treatment records related to Stiefel from Dr. Griffith. (Doc. 74-4). In response, the clinic where Dr. Griffith practices advised defense counsel that Stiefel was not and never had been a patient of Dr. Griffith or any other provider at the clinic. (*Id.*).

On August 21, 2020, Stiefel's counsel clarified through unidentified means that Dr. Griffith was an expert witness rather than a treating provider. (Doc. 74). On August 27, 2020, Stiefel provided Malone and Greenwood with a report completed by Dr. Griffith after evaluating Stiefel on August 14, 2020. (Doc. 74; Doc. 74-6). On August 28, 2020, Stiefel submitted a "Third Supplemental Disclosure Statement" that identified Dr. Griffith clearly as an expert witness. (Doc. 74-7). Although Stiefel now has identified Dr. Griffith as an expert witness and

produced a report containing his opinions, he has never produced Dr. Griffith's curriculum vitae, rate information, or testimony list.  (Doc. 74).

Malone and Greenwood take the position Stiefel failed both to disclose Dr. Griffith's identity as an expert witness and to disclose Dr. Griffith's report until August 2020, approximately seven months after the deadline for his expert disclosures.  (Doc. 74).  It is at least debatable whether the January 15, 2020 "Expert Disclosure Statement" put Malone and Greenwood on notice Stiefel intended to offer Dr. Griffith as an expert witness.  The document clearly stated it was a disclosure of Stiefel's expert witnesses made pursuant to Rule 26(a)(2), and the fact that the other physicians identified in the disclosure were Stiefel's treating providers is not necessarily contrary to the stated purpose because a treating physician may testify either as a lay witness or an expert witness.  *See Leathers*, 233 F.R.D. at 690 (noting plaintiff's treating physician had also been designated as an expert witness); *Sweat v. United States*, 2015 WL 8270434, at *2 (M.D. Fla. Dec. 8, 2015) (noting treating physician may testify as a lay witness or an expert witness).[5]  Regardless, Stiefel was required not only to identify Dr. Griffith as an expert witness but also to supply Dr. Griffith's report on or before January 15, 2020, and it is beyond debate

---

[5] The undersigned acknowledges the description of Dr. Griffith's anticipated testimony is more in keeping with the testimony a lay witness would offer.  *See Rondini*, 2020 WL 136858, at *3-5 (holding treating physicians' testimony was based on personal experience and observation of decedent during treatment and, therefore, properly characterized as lay witness testimony).

the report Stiefel supplied on August 27, 2020, approximately seven months after the deadline for his expert disclosures, was untimely. As stated, Stiefel makes no argument otherwise.[6]

He also makes no argument the untimely submission of Dr. Griffith's expert report was substantially justified or is harmless, as is his burden in avoiding the sanction of evidentiary exclusion. Beyond Stiefel's failure to satisfy his burden, the undersigned affirmatively finds the untimely submission of Dr. Griffith's expert report was not substantially justified and is not harmless. The parties have been authorized to conduct discovery since October 17, 2018. (Doc. 19). The deadline for Stiefel's expert witness disclosures originally was set as March 15, 2019, and was extended three times, such that the disclosures finally became due on January 15, 2020. (Docs. 24, 45, 52, 59). The parties did jointly seek further extension of certain deadlines on March 20, 2020, but the deadline for Stiefel's expert witness disclosures was not one of them. (Doc. 64).[7] Moreover, while the undersigned

---

[6] The undersigned notes any attempt to argue the submission of Dr. Griffith's report was a supplemental disclosure made pursuant to Rule 26(e) would be futile. While Rule 26(e) provides for the supplementation of an expert witness disclosure made pursuant to Rule 26(a), it does not license parties to circumvent the full disclosure requirement implicit in Rule 26(a) or deadlines established by a court's scheduling order. *Bowman v. Hawkins*, 2005 WL 1527677, at *2 (S.D. Ala. June 28, 2005) (citing *Beller ex rel. Beller v. United States of America*, 221 F.R.D. 689, 696 (D.N.M. 2003)).

[7] If Stiefel had sought a further extension of the deadline for his expert disclosures after its expiration, he would have been required to show "good cause," FED. R. CIV. P. 16(b)(4), a standard that "precludes modification unless the [deadline] cannot be met despite the diligence of the party seeking the extension," *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (internal quotation marks omitted).

instructed the parties on March 31, 2020, that until the health emergency caused by the COVID-19 virus abated, they were required to obtain leave of court before seeking discovery from healthcare professionals, the undersigned granted the parties such leave by an order dated June 26, 2020. (Docs. 66, 71). The extension of Stiefel's expert disclosure deadline by a total of 10 months was generous. The January 15, 2020 deadline afforded Stiefel plenty of time to obtain and submit an expert report regarding his cognitive and emotional status, and Stiefel never sought a further extension of that deadline after it passed without his provision of Dr. Griffith's report. Based on the foregoing, there was no substantial justification for Stiefel's untimely disclosure of Dr. Griffith's report.

Additionally, the untimely disclosure prejudiced Malone and Greenwood to the extent it left them with little more than two weeks to digest the report and attempt to arrange for a rebuttal expert before their own September 13, 2020 deadline for expert disclosures, despite their earlier attempts to clarify Dr. Griffith's role in this litigation and obtain his records. (Doc. 71). This prejudice is compounded by the fact that the untimely report remains incomplete to the extent Stiefel has not produced Dr. Griffith's curriculum vitae, rate information, or testimony list. *See OFS Fitel, LLC*, 549 F.3d at 1362 (noting information regarding expert's compensation, publications, and prior testimony "is important information necessary

to attorneys in preparation for deposing the expert" and holding expert's affidavit that lacked this information did not comply with Rule 26).

For the reasons stated above, the motion seeking to preclude the admission of opinions offered by Dr. Griffith (Doc. 74) is due to be granted.

## IV.   Motion to Strike Morgan's Opinions

Stiefel disclosed Whitney Morgan as an expert witness in his January 15, 2020 "Expert Disclosure Statement" and again in his August 28, 2020 "Third Supplemental Disclosure Statement." (Docs. 74-1, 74-7, 85-2, Doc. 85-3). Also on August 28, 2020, Stiefel disclosed a report setting out Morgan's anticipated testimony and the materials on which that anticipated testimony relied, a summary of Morgan's qualifications, and a copy of Morgan's resume. (Doc. 85-1 at 27-36).[8] Counsel for Malone and Greenwood deposed Morgan on September 8, 2020. (Doc. 85-4). Morgan offers the following opinions related to the remaining claims in this case: (1) the Model Commercial Driver License Manual (the "Model CDL Manual") and the Federal Motor Carrier Safety Regulations (the "FMCSRs") establish the standard of care for CMV drivers; (2) Malone committed a number of errors in operating his CMV that resulted in a breach of this standard of care; (3) these same errors exhibited a conscious disregard for safety; (4) Malone caused or contributed

---

[8] Arguably, the disclosure of this report was untimely for the same reasons why Dr. Griffith's report was untimely. However, Malone and Greenwood do not seek to preclude the admission of Morgan's opinions on timeliness grounds.

to the cause of the accident; and (5) the formula Malone uses to determine a safe following distance violated the Model CDL Manual.  (Doc. 85-1 at 29-30; Doc. 85-4 at 6-12).

Stiefel relied on certain of Morgan's opinions in opposing the motion for partial summary judgment filed by Malone and Greenwood.  (Doc. 81).  In response, Malone and Greenwood filed a motion to strike all of Morgan's opinions on the ground they do not satisfy the requirements of Rule 702 of the *Federal Rules of Evidence* and accompanying case law, including *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, (1993).  (Doc. 84).  Stiefel filed a response to the motion, and Malone and Greenwood filed a reply (Docs. 85, 86).

## A.    Request for Hearing

As a preliminary matter, the undersigned addresses Stiefel's assertion a so-called *Daubert* motion is generally inappropriate at the summary judgment stage of litigation.  Binding and persuasive precedent, including a case cited by Stiefel in support of his assertion, holds otherwise.  *See, e.g., McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002) (rejecting argument expert testimony should have been tested by cross-examination and weighed by jury, where trial court properly determined testimony did not meet requirements of Rule 702 and accompanying case law); *Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997) (unequivocally rejecting assertion *Daubert* is strictly

a time-of-trial phenomenon) (cited by Stiefel).   Moreover, while a hearing on a *Daubert* motion may be helpful (e.g., in complicated cases involving multiple experts), neither the *Federal Rules of Evidence* nor pertinent case law require a court to hold a hearing before ruling on a *Daubert* motion.  *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Florida*, 402 F.3d 1092, 1113 (11th Cir. 2005); *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 n.10 (11th Cir. 2007).

Neither this case on the whole nor the particular expert testimony at issue is so complicated as to require a *Daubert* hearing.  Moreover, Morgan has had ample opportunity to explain the bases for his opinions – through the submission of the report contemplated by Rule 26(a)(2)(B), during his deposition, and in affidavit testimony – and Stiefel offers no suggestion as to how Morgan might bolster his opinions if given an additional opportunity to do so.  A trial court is afforded the same latitude in deciding when "special briefing or other proceedings" are needed to investigate the reliability of expert testimony as in deciding whether or not expert testimony is reliable, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 152 (1990), and in this case the undersigned determines a *Daubert* hearing would not materially advance her understanding of the issues.

14

### B.    Legal Standard

Rule 702 governs the admission of expert testimony.  It was amended in 2000 in response to *Daubert* and the cases applying *Daubert*, including *Kumho Tire Co.* *See* FED. R. EVID. 702 advisory committee's note to 2000 amendment.  In *Daubert*, the Supreme Court held a trial court must ensure scientific expert testimony is both reliable and relevant.  509 U.S. at 589-95.  In *Kumho Tire*, the Supreme Court held the "gatekeeping" obligation imposed on trial courts by *Daubert* applies not only to testimony based on scientific knowledge but also to testimony based on technical and other specialized knowledge.  526 U.S. at 141.  In its current version, Rule 702 provides:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  To fulfill its gatekeeping obligation under *Daubert*, a trial court must undertake a "rigorous inquiry" to determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (internal quotation marks omitted).  The party offering the expert testimony has the burden of proving each of the foregoing elements by a preponderance of the evidence.  *Id.* at 1292.  The Eleventh Circuit has described this burden as "substantial."  *Cook ex rel. Estate of Tessier*, 402 F.3d at 1107.

A district court enjoys "considerable leeway" in making evidentiary rulings, including those regarding the admissibility of expert testimony.  *Id.* at 1103 (internal quotation marks omitted).  Such rulings are reviewed under the deferential abuse-of-discretion standard, such that they will not be reversed unless manifestly erroneous.  *Id.*  Moreover, the standard is not relaxed even though a ruling on the admissibility of expert testimony may be outcome-determinative.  *Id.* at 1107.

## C.    Qualifications Prong

Various considerations may qualify an individual to offer expert testimony on a subject.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing plain language of Rule 702).  "While scientific training or education may provide means to qualify, experience in a field may offer another path to expert status."  *Id.* at 1260-61.  The standard for finding an expert qualified to testify on a given topic is "not stringent," and "so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibilty and weight, not admissibility."  *Clena*

*Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (internal quotation marks omitted) (alteration adopted).

The undersigned first briefly considers a procedural issue raised by Malone and Greenwood with respect to Morgan's qualifications.  Stiefel did not submit evidence to support Morgan's expert qualifications with his opposition to the motion for partial summary judgment but, rather, submitted it only in response to the motion to strike Morgan's opinions.  Malone and Greenwood argue the undersigned should not consider this evidence in ruling on their motion for partial summary judgment because it was not submitted within the time prescribed by the summary judgment briefing schedule and Stiefel has not attempted to make the showing required by Rule 16(b)(4) for modification of a scheduling order.  (Docs. 84, 86).  None of the opinions on which Stiefel relies in opposing the motion for partial summary judgment, to the extent determined admissible, affect the disposition of that motion, which is due to be granted for the reasons discussed below.  Accordingly, it is unnecessary to address the procedural argument made by Malone and Greenwood in greater detail.  The undersigned notes Stiefel's submission of evidence pertaining to Morgan's qualifications was timely with respect to the motion to strike Morgan's opinions.  Therefore, consideration of the evidence in the limited context of ruling on the motion to strike is appropriate.  Accordingly, the undersigned now turns to that evidence.

17

Morgan's resume shows he received a bachelor of science degree in business administration and transportation from the University of Tennessee, Knoxville, in 1975.   (Doc. 85-1 at 31).   He was employed by the U.S. Department of Transportation as a Highway Safety Management Specialist between 1975 and 1982, during which time he received more than 300 hours of training at the department's Transportation Safety Institute.  (*Id.* at 32-34).  His job duties as a Highway Safety Management Specialist included investigating trucking accidents and their causes. (*Id.* at 33).  In 1983, Morgan founded Motor Carrier Safety Consulting, Inc., which consults with CMV operators regarding safety issues.  (*Id.* at 31).  Services Morgan provides through his consulting business include the creation of safety compliance programs designed to reduce highway accidents, the creation and/or provision of driver training programs that address compliance with applicable safety regulations and the topic of accident avoidance, and the investigation of trucking accidents. (*Id.*).   Additionally, Morgan has offered affidavit testimony that the State of Alabama hired him to train state troopers regarding the safe operation of CMVs and accident investigation.  (*Id.* at 4).  He also testified he has served as an expert witness in approximately 1,000 lawsuits, most of which involved his opinions regarding the safe and proper operation of a CMV.  (*Id.* at 3; *see also id.* at 14-25).[9]

---

[9] The undersigned acknowledges it is not clear whether Morgan's expert testimony was admitted or excluded in these lawsuits.

The undersigned is satisfied Morgan's education, training, and experience qualify him to offer opinions regarding the safe operation of a CMV generally and whether a CMV was operated properly in a particular situation.  The undersigned is further satisfied Stiefel disclosed Morgan as an expert witness regarding these areas of inquiry.  While Malone and Greenwood note a district judge in this judicial district recently excluded an opinion Morgan offered in a trucking accident case on qualification grounds, that case is distinguishable.  In *Walker v. Ergon Trucking, Inc.*, the court did not determine Morgan was unqualified to offer an opinion regarding the proper operation of a CMV but, rather, that the plaintiff had not met his burden of coming forward with evidence to establish Morgan's qualification to offer such an opinion.  2020 WL 6537651, at *2 (N.D. Ala. Apr. 23, 2020).  Whatever evidence was lacking in *Walker*, Stiefel has supplied it in this case.

The undersigned also specifically rejects the argument Morgan should not be permitted to offer an opinion regarding the proper method for calculating following distance.  The basis of this argument made by Malone and Greenwood is that when asked to explain the rationale for using seconds, as opposed to car lengths, to calculate following distance, Morgan testified the human eye is not capable of perceiving the latter unit of measure accurately and reliably.  (Doc. 85-4 at 6).

Malone and Greenwood contend this rationale touches on the field of "human factors" and object Morgan was not disclosed as a human factors expert.[10]

Given Morgan is qualified to offer opinions regarding the safe operation of a CMV, he is qualified to give brief testimony responsive to a question tangentially related to the safe operation of a CMV. Explaining the rationale underlying the purported proper method for calculating following distance, although it may properly be characterized as a rationale relying on human factors, does not require Morgan to qualify or be disclosed as a human factors expert. The undersigned declines to address any other arguments raised by Malone and Greenwood regarding Morgan's qualifications because the opinions to which they relate are due to be excluded for other reasons.

### D.    Reliability & Relevance Prongs

In assessing the reliability of expert testimony, a court must be mindful to focus its inquiry on the methodology employed by an expert to reach his or her opinions, rather than on the opinions themselves. *Daubert*, 509 U.S. at 594-95. "[I]t

---

[10] The field of human factors " 'is concerned with the application of what we know about people, their abilities, characteristics, and limitations to the design of equipment they use, environments in which they function, and jobs they perform.'" *Padula v. Carnival Corp.*, 2017 WL 7792714, at *5 (S.D. Fla. Oct. 13, 2017) (quoting Human Factors and Ergonomics Society, Educational Resources, Definitions of Human Factors and Ergonomics)); *see also* 40 AM. JUR. TRIALS § 629 (originally published in 1990) ("Human factors is also a field that is increasingly concerned with human perception and awareness, and the interrelationship of a human's inherent capabilities and limitations with product designs and the surrounding environment.").

is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence," *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003), but "[t]o see if how [an expert] got to where he ended up makes reasoned, scientific sense," *McCreless v. Global Upholstery Co., Inc.*, 500 F. Supp. 2d 1350, 1353 (N.D. Ala. 2007).   Although an expert's experience may support his opinions, experience alone does not necessarily "render[] reliable *any* conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261 (emphasis in original).   An expert who relies solely or primarily on experience " 'must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"   *Id.* at 1265 (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment) (emphasis added in *Frazier*).   While a court has "substantial discretion in deciding how to test an expert's reliability," *Rink*, 400 F.3d at 1291 (internal quotation marks omitted), it must do more than " 'tak[e] the expert's word for it,'" *Frazier*, 387 F.3d at 1261 (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment).   The *ipse dixit* of a qualified expert is insufficient to establish reliability.   *Id.*

In assessing relevance, a trial court should determine whether the expert testimony reflects specialized knowledge that will help the jury understand the evidence or determine a fact in issue.   *See* FED. R. EVID. 702.   Expert testimony is

21

helpful to the jury if it concerns "matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. While helpful expert testimony may include testimony regarding an "ultimate issue," the issue must be a factual one. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citing Fed. R. Evid. 704). "An expert may not . . . merely tell the jury what result to reach," meaning he may not offer testimony regarding the legal implications of conduct. *Id.* Otherwise put, legal conclusions couched as expert testimony are impermissible. *See id.*; *Cook ex rel. Estate of Tessier*, 402 F.3d at 1112 n.8 ("[T]estifying experts may not offer legal conclusions . . . ."). "[T]he court must be the jury's only source of law." *Montgomery*, 898 F.2d at 1541; *see also In re Heparin Product Liability Litigation*, 2011 WL 1059660, at *8 (N.D. Ohio Mar. 21, 2011) ("Testimony containing legal conclusions impermissibly convey[s] a witness' unexpressed, and perhaps erroneous[,] legal standards to the jury.") (internal quotation marks omitted). Moreover, it is the jury's job to determine whether conduct satisfies the elements of a claim or defense, as a consequence of which an expert's "opinion" on the matter is irrelevant. *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (noting question phrased to elicit legal conclusion from expert witness "would supply the jury with no information other than the expert's view of how [the jury's] verdict should read," and that expert testimony containing legal conclusion is irrelevant).

Malone and Greenwood argue Morgan's opinions Malone breached the applicable standard of care, exhibited a conscious disregard for safety, and caused or contributed to the cause of the accident are impermissible legal conclusions. The undersigned agrees Morgan's opinions Malone exhibited a conscious disregard for safety and caused or contributed to the cause of the accident are legal conclusions but rejects the argument his opinion Malone breached the applicable standard of care falls outside the bounds of permissible expert testimony.

The task of distinguishing expert testimony regarding an ultimate issue of fact from expert testimony that offers a legal conclusion "is not a facile one." *Owen*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Haney v. Mizell*, 744 F.2d 1467, 1473 (11th Cir. 1984) (noting courts "often struggle in attempting to characterize challenged testimony as either admissible factual opinions or inadmissible legal conclusions" and that "[t]he distinction . . . is not always easy to perceive"). Using an example given in the Advisory Committee notes to Rule 704, the Fifth Circuit has explained:

> The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read.

*Owen*, 698 F.2d at 240.

Although the distinction often may be challenging, in this case it is not. Courts routinely exclude as inadmissible expert testimony that a defendant acted with a "conscious disregard" for a plaintiff's safety because such testimony is not an opinion but, rather, a legal conclusion regarding an element of a wantonness claim. *See, e.g., Ricker v. Southwind Trucking, Inc.*, 2006 WL 5157692, at *8 (N.D. Ga. July 13, 2006) (prohibiting Whitney Morgan from testifying in trucking accident case that defendants' conduct amounted to "conscious disregard" for risk).[11] Accordingly, Morgan's opinion Malone's conduct exhibited a conscious disregard for safety is inadmissible.

The Fifth Circuit in *Owen* held the trial court was "well justified" in concluding the question "[D]o you have any opinion as to the cause of the accident," posed by the defendant's attorney to the defendant's expert witness during trial, sought an opinion as to the legal, not factual, cause of the accident. *Owen*, 698 F.2d at 240. The circuit court court reasoned "[t]his was so because there was no dispute in the evidence as to the factual cause of the mishap: [the plaintiff] ran into the pipeline with his bulldozer," "mak[ing] it obvious that the attorney was asking the witness to opine that [the plaintiff] was contributorily negligent." *Id.*; *see also Key*

---

[11] *See also Flock v. Script-Tokai Corp.*, 2001 WL 36390120, at *1 (S.D. Tex. Sept. 28, 2001) (prohibiting expert from testifying any party "acted with a conscious indifference and reckless disregard"); *In re Heparin Product Liability Litigation*, 2011 WL 1059660, at *5-6, 8 (N.D. Ohio Mar. 21, 2011) (prohibiting experts from testifying defendants' conduct indicated they "consciously disregarded" plaintiffs' welfare).

*v. Celadon Trucking Servs., Inc.*, 2010 WL 11531270, at *5 (S.D. Ga. Feb. 9, 2010) (excluding expert's testimony negligence of tractor-trailer driver proximately caused motorcylist's injury).  Similarly, here, there is no question regarding the factual cause of the accident in the sense that no one disputes the CMV rear-ended the pickup truck, and thus, Morgan's opinion Malone caused or contributed to the cause of the accident is an impermissible legal conclusion.  Accordingly, Morgan's opinion Malone caused or contributed to the cause of the accident is likewise inadmissible.

On the other hand, courts routinely view expert testimony regarding the standard of care applicable in a trucking accident case, and a driver's conduct in relation to that standard (including that the conduct breached the standard), not as an impermissible legal conclusion but, rather, as admissible if reliable and otherwise relevant.  *See, e.g., Ricker*, 2006 WL 5157692, at *8 (permitting Whitney Morgan to offer testimony regarding standard of care applicable in trucking accident case and reasons defendants' conduct fell short of that standard).[12]  Accordingly,

---

[12] *See also Key*, 2010 WL 11531270, at *4-5 (rejecting argument expert's testimony regarding standard of care applicable in trucking accident case and application of that standard to facts of case were impermissible legal conclusions); *Hood v. Sellers*, 2018 WL 3429708, at *2 (M.D. Pa. July 16, 2018) (permitting expert to testify regarding standard of care applicable in trucking accident case and any breach thereof by defendants); *Martinez v. Cont'l Tire The Americas, LLC*, 2020 WL 5943691, at *4-5 (D.N.M. Oct. 7, 2020) (noting that "[g]enerally, an expert in a negligence action may opine on the standard of care and the breach of that standard" and holding expert testimony regarding standard of care applicable in trucking accident case would not encroach on court's duty to instruct jury on legal standards).

Morgan's opinion Malone breached the applicable standard of care is admissible if reliable and otherwise relevant, considerations the undersigned addresses below.

As stated, Morgan opines the Model CDL Manual and the FMCSRs establish the standard of care for CMV drivers and that Malone breached this standard by committing multiple errors.  First, Morgan opines Malone erred by failing to keep a proper lookout and perceive a hazard, by which he means Malone should have seen the pickup truck slowing in front of him.  Second, Morgan opines Malone erred by failing to manage his speed, by which he means Malone should have slowed the CMV when the pickup truck began to slow.  Third, Morgan opines Malone erred by failing to have a plan to avoid the accident, such as by braking or changing lanes.  Fourth, Morgan opines Malone erred by failing to communicate his presence, by which he means Malone could have sounded his air horn to give the pickup truck an opportunity to avoid the collision.  Fifth, Morgan opines Malone erred by driving while distracted.  Sixth, Morgan opines Malone erred by trying to "time the turn" of the pickup truck.  Seventh, and finally, Morgan opines Malone erred by failing to manage his space properly.  (Doc. 85-1 at 29-30; Doc. 85-4 at 6-12).[13]

Morgan does not explain in any way how he formed the opinion Morgan should have seen the pickup truck slowing in front of him and either (1) avoided the

---

[13] While Morgan also refers to Malone's failure to maintain "safe vehicle control," he acknowledged during his deposition that his other opinions regarding operator errors committed by Malone come under the umbrella of "safe vehicle control."  (Doc. 85-4 at 11).

collision by slowing his own speed, braking, or changing lanes, or (2) given the pickup truck the opportunity to avoid the collision by sounding his air horn. Moreover, he conceded during his deposition that he was not sure whether there was a free lane into which Malone could have steered to avoid the pickup truck – information that would seem to be critical to a determination Malone should have changed lanes to prevent the collision. (Doc. 85-4 at 11). Absent any explanation as to how Morgan determined Malone committed the foregoing errors, the determination is nothing more than *ipse dixit* and, therefore, unreliable. *See Cook ex rel. Estate of Tessier*, 402 F.3d at 1113 ("Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough.); *McGee v. Evenflo Co., Inc.*, 2003 WL 23350439, at *14 (M.D. Ga. Dec. 11, 2003) (holding that while engineer's expert opinions may have been accurate, he had done nothing to show they were), *aff'd*, 143 F. App'x 299 (11th Cir. 2005).

In discussing his opinion Malone was driving while distracted and tried to "time the turn" of the pickup truck, Morgan essentially testified it must have been "one or the other." (Doc. 85-4 at 9-10). However, he offers no basis for his determination distraction is among the possible explanations for the accident. In fact, he acknowledged during his deposition that Malone testified under oath that he was not distracted at the time of the accident and conceded he was not aware of any

evidence that would suggest Malone was distracted at the time of the accident. (Doc. 68-1 at 49, 51; Doc. 85-3 at 10). Consequently, the determination Malone was driving while distracted amounts to no more than speculation, which is not a reliable basis for an expert opinion. *See Rink*, 400 F.3d at 1291 (noting *Daubert* requires trial courts to act as "gatekeepers" to ensure speculative, unreliable expert testimony does not reach jury); *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (same); *cf. King v. Cessna Aircraft Co.*, 2010 WL 1980861, at *8 (S.D. Fla. May 18, 2010) (holding expert's opinion that, absent any other explanatory evidence, pilots' conduct must have been influenced by distractions in cockpit was reasonably supported by explicit references to his tangible experience and how the specifics of that experience led to his conclusion).

Morgan's opinion Malone tried to "time the turn" of the pickup truck relies on Malone's testimony he thought the pickup truck was turning into the parking lot of the fast-food restaurant and would be clear of Gault Avenue before the CMV reached it. (Doc. 68-1 at 49; Doc. 85-4 at 6, 9). Morgan, in turn, testified, "[O]bviously, you never want to assume that somebody's going to do what you think they're going to do" because it creates the potential for an accident. (Doc. 85-4 at 9). Whether Malone's testimony is properly characterized as evidencing an intent to "time the turn" of the pickup truck is not a question as to which an expert may opine but, rather, one for the jury to decide. *See In re Diet Drugs (Phentermine,*

*Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 2000 WL 876900, at *2, 3, 9 (E.D. Pa. June 20, 2000) ("The question of intent is a classic jury question and not one for experts . . . ."); *In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 546-47, 546 n.38 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."); *Quevedo v. Iberia, Lineas Aereas De Espana, S.A. Operadora Unipersonal*, 2018 WL 4932097, at *4 (S.D. Fla. Oct. 11, 2018) (prohibiting expert from offering testimony regarding pilots' motivation for landing at alternative airport).  Moreover, Morgan's determination Malone erred in trying to "time the turn" of the pickup truck does not reflect specialized knowledge but, rather, in Morgan's own words, the "[o]bvious[]" rule that a driver should not make a decision regarding the operation of his vehicle based on an assumption another driver will or will not behave in a certain way. Accordingly, the determination is irrelevant to the extent the average lay person would be able not only to infer Malone's intent from his testimony but also to determine whether that intent reflected tortious error on Malone's part.

For the foregoing reasons, Malone's opinions Morgan breached the applicable standard of care by (1) failing to see the pickup truck slowing in front of him, slow his own speed, brake, change lanes, or sound his air horn, (2) driving while distracted, and/or (3) trying to "time the turn" of the pickup truck are inadmissible.

However, as discussed below, the undersigned reaches a different conclusion with respect to Morgan's opinion Malone did not manage his space properly.

Morgan's opinion Malone did not manage his space properly is based on Malone's testimony that as a general rule he tries to maintain a following distance of at least four-to-five car lengths when he is driving in town.  (Doc. 68-1 at 17; Doc. 85-4 at 6-9).  Morgan claims this method of calculating following distance conflicts with a rule in the Model CDL Manual that requires CMV drivers to use seconds to calculate the appropriate following distance and that four-to-five car lengths does not translate to a temporally-sufficient following distance for a CMV.  (Doc. 85-4 at 6-9).

Malone and Greenwood argue this opinion is not reliable, citing *Walker*.  In that case, the court not only determined the plaintiff had not met his burden of coming forward with evidence to establish Morgan's expert qualifications but also that Morgan's opinion, which was based on rules set out in the Model CDL Manual, was unreliable.  *Walker*, 2020 WL 6537651, at *3.  The court reasoned Morgan "offer[ed] absolutely no explanation" why the Model CDL Manual was a reliable basis for his opinion," "merely assume[d] that [the defendant driver] was trained under [that manual]," and "d[id] not offer any evidence" other trucking experts would use the manual to judge the defendant driver's conduct.  *Id.*  By contrast, here, Morgan has offered affidavit testimony that all 50 states adopted the Model CDL

Manual in 1992; local, state, and federal law enforcement entities use and rely on the manual; and CMV safety professionals, such as field agents for the U.S. Department of Transportation, also routinely use the manual. (Doc. 85-1 at 5). Moreover, Morgan testified during his deposition that the rule provided in the Model CDL Manual regarding following distance is the standard for CMV drivers and noted Malone testified during his own deposition that generally he was trained according to the Model CDL Manual adopted by the State of Tennessee. (Doc. 68-1 at 16-18; Doc. 85-4 at 7). The foregoing testimony distinguishes this case from *Walker*.

The undersigned notes the Model CDL Manual does not carry the force of law or regulation, and neither it nor the FMCSRs *establish* the applicable standard of care in a trucking accident case. *See Hood*, 2018 WL 3429708, at *2 (holding the same with respect to New York CDL Manual); *Benedict v. Hankook Tire Co. Ltd.*, 286 F. Supp. 3d 785, 796 (E.D. Va. 2018) (rejecting argument Virginia CDL Manual set applicable standard of care); *Martinez*, 2020 WL 5943691, at *5 (holding standards of care in state law negligence action were not conclusively set forth in FMCSRs). Moreover, an expert witness may not testify as to what one or more of the FMCSRs mean or that a defendant's conduct violated any of those standards because the meaning of a federal regulation is a question of law for the court. *See Nicholson v. McCabe*, 2003 WL 25676474, at *1 (N.D. Ala. June 2, 2003) (noting

31

"[a]n expert may not [] testify to the legal implications of conduct," and "the *judge* is the proper avenue for instructing the jury as to [FMCSRs], not an expert witness"); *Ricker*, 2006 WL 5157692, at *8 (prohibiting Whitney Morgan from testifying as to what FMCSRs meant or opining defendants' conduct violated any of those regulations); *Trinidad v. Moore*, 2016 WL 5239866, at *5-6 (M.D. Ala. Sept. 20, 2016) (prohibiting expert from offering testimony that suggested a violation of the FMCSRs because "expert witnesses may not testify that a party violated a federal regulation."). Accordingly, Morgan will not be permitted to testify the formula Malone generally uses to determine a safe following distance violates the Model CDL Manual or that Malone's conduct otherwise violated the Model CDL Manual or the FMCSRs.

However, courts routinely permit a qualified expert to use a state's CDL Manual and/or the FMCSRs as bases for an opinion regarding the applicable standard of care in a trucking accident case. *See, e.g., Ricker*, 2006 WL 5157692, at *6-8 (permitting Whitney Morgan to offer testimony regarding standard of care applicable in trucking accident case based in part on standards established by the Model CDL Manual); *Lohr v. Zehner*, 2014 WL 2832192, at *3 (M.D. Ala. June 23, 2014) (permitting trucking safety expert to opine regarding FMCSRs, to the extent

Alabama law permits a jury to consider those regulations in determining whether a defendant exercised appropriate care for a situation).[14]

The undersigned also notes the factual basis for Morgan's opinion Malone did not manage his space properly is an assumption: Malone did not testify that immediately preceding the accident he was maintaining a following distance of four-to-five car lengths; he testified that as a general rule he tries to maintain a following distance of at least four-to-five car lengths when he is driving in town.  (Doc. 68-1 at 17).  Accordingly, Malone's opinion relies on the assumption that immediately preceding the accident Malone was maintaining a following distance in keeping with the *lower* limit of his *general* practice.  However, an opinion based on an assumption is not necessarily unreliable; it is possible for a factual assumption to support an expert's opinion, provided there is some support for the assumption in the record. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (noting

---

[14] *See also Hatten v. Sholl*, 2002 WL 236714, at *3-4 (W.D. Va. Feb. 13, 2002) (permitting expert to use his experience and various professional materials, including the Virginia and Ohio CDL Manuals, as the bases for his testimony regarding the standard of care applicable in a trucking accident case)*; Lundquist v. Whitted*, 2016 WL 3674695, at *3 (D. Wyo. May 25, 2016) (permitting trucking safety expert to use his experience, the Wyoming CDL Manual, and various other publications as the bases for opinions regarding trucking accident); *Hood*, 2018 WL 3429708, at *2 (permitting expert to use New York CDL Manual as a basis for his opinion on the applicable standard of care in the trucking industry with respect to the safe operation of a CMV and on any breach thereof); *Martinez*, 2020 WL 5943691, at *5 (D.N.M. Oct. 7, 2020) ("[A]n expert is not prohibited from testifying about the standard of care in his industry merely because federal regulations form part of those standards."); *Meador v. Starr Indem. & Liab. Ins. Co.*, 2020 WL 7043603, at *8-9 (E.D. La. Dec. 1, 2020) (permitting expert to offer opinion regarding conduct of CMV driver that was based on guidance found in Louisiana CDL Manual).

expert opinion based on factual assumption supported by record may be reliable); *Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006) (noting "[e]xperts routinely base their opinions on assumptions" and that "[t]he question is not whether the opinion is based on assumptions, but whether there is some factual support for them"); *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1320 n.14 (M.D. Fla. 2015) (declining to exclude expert opinion based on assumption for which expert offered some support).  Where such support exists, the assumption is a subject that may be tested at trial, as opposed to a basis for exclusion under Rule 702 and the accompanying case law.  *See McLean*, 224 F.3d at 801 (noting mere weakness in factual basis of opinion goes to weight, rather than admissibility, of evidence); *Richman*, 415 F. Supp. 2d at 942 (noting that if there is factual support for assumption on which expert opinion is based, "it is for the jury, properly instructed, to determine the credibility of the witnesses and thus the weight to be given to the expert opinion"); *Tillman*, 96 F. Supp. 3d at 1320 n.14 (noting opposing counsel could attack any weaknesses in expert's reasoning on cross-examination).

Malone's testimony regarding his general practice with respect to following distance provides at least some support for the assumption on which Morgan's opinion regarding Malone's space management relies.  Morgan conceded during his deposition that he did not know what following distance Malone was keeping immediately preceding the accident.  (Doc. 85-4 at 11).  He stated that was a question

for the plaintiff's accident reconstruction expert. (*Id.*). He also conceded he did not know whether by four-to-five car lengths Malone meant the nose-to-tail length of four to five cars or the distance that would be reasonable for four to five cars to keep between the CMV and the pickup truck. (*Id.*). He stated he would be speculating were he to attempt to answer that question because Malone did not clarify what he meant in his own deposition. (*Id.*). These concessions may undermine Morgan's opinion regarding Malone's space management, but they do not provide grounds for precluding the admission of that opinion at this stage of the proceedings. Opposing counsel may cross-examine Morgan regarding the opinion at trial.

Given Morgan's opinion Malone did not manage his space properly is sufficiently reliable, the undersigned must next consider whether the opinion is relevant, as that term is used in the context of *Daubert*. Malone and Greenwood argue the opinion is not relevant – that is, would not be helpful to the jury – and, moreover, risks confusing or misleading the jury because it is contrary to Alabama's statutory "Rule of the Road." (Doc. 84 at 12-13). More specifically, they cite Ala. Code § 32-5A-89(a), which they assert evidences the expectation drivers should calculate following distance in increments of feet, not seconds. (*Id.* at 12-13). Section 32-5A-89(a) requires the driver of a motor vehicle to maintain a "reasonable and prudent" following distance of "at least 20 feet for each 10 miles per hour of speed." The statutory rule does not speak to the method by which a driver must

35

calculate his following distance but, rather, the amount of following distance a driver must maintain. Accordingly, Morgan's opinion regarding Malone's method of calculating following distance is not in conflict with the statutory rule, which provides no basis for a determination the opinion risks confusing or misleading the jury.

Additionally, Morgan's opinions Malone did not calculate his following distance properly and was following the pickup truck too closely are helpful and, therefore, relevant because the average lay person is not familiar with the operation of a commercial motor vehicle. *See*, e.g., *See Key*, 2010 WL 11531270, at *5 (holding expert's testimony regarding relevant legal standard of care as applied to CMV driver's actions would be helpful to factfinder in deciding whether driver was negligent); *Lohr*, 2014 WL 2832192, at *2 (rejecting argument opinions of trucking safety expert were not beyond the ken of lay persons, reasoning "[a] tractor-trailer is a significantly larger and more dangerous vehicle than an automobile and . . . a significantly different kind of vehicle from that driven by an ordinary juror"); *Duling v. Domino's Pizza, LLC*, 2015 WL 3407602, at *13-14 (N.D. Ga. Jan. 14, 2015) (holding expert's testimony CMV driver's conduct violated CMV industry's

standard of care would be helpful to jury because it concerned matters beyond the understanding of the average lay person).[15]

For the foregoing reasons, Morgan's opinion Malone breached the applicable standard of care by failing to manage his space properly (i.e., by following the pickup truck too closely) is admissible.  However, in offering this opinion, Morgan will not be permitted to testify the Model CDL Manual and/or the FMCSRs establish the applicable standard of care, that the formula Malone generally uses to determine a safe following distance violates the Model CDL Manual, or that Malone's conduct otherwise violated the Model CDL Manual or the FMCSRs.

## V.      Motion for Partial Summary Judgment

### A.      Legal Standard

Under Rule 56 of the *Federal Rules of Civil Procedure*, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The party seeking

---

[15] *See also Valyou v. Vannest*, 2016 WL 7664288, at *3 (D. Wyo. Sept. 19, 2016) (permitting expert to testify regarding standards and practices in commercial trucking industry, and to compare those standards and practices to defendant truck driver's conduct, because "a typical juror most likely does not have any significant knowledge and experience with the federal regulations surrounding the trucking industry"); *Martinez*, 2020 WL 5943691, at *5 (holding expert testimony regarding standard of care in maintaining and operating commercial vehicles would assist jury in specialized area with which they were unilkely to be familar).

summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute as to a material fact for trial. *Id.* at 324.

> [T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322.

The substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 248. If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

**B.     Discussion**

"To hold a defendant liable for wanton conduct in Alabama, a plaintiff must establish a high degree of culpability." *Craft v. Triumph Logistics, Inc.*, 107 F. Supp. 3d 1218, 1220 (M.D. Ala. 2015).   "While negligent conduct is characterized by inattention, thoughtlessness, or heedlessness and a lack of due care, wantonness is characterized by a conscious act."   *Id.* (internal quotation marks and citation omitted).   Wantonness requires proof of "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (citing *Bozeman v. Central Bank of the South*, 646 So. 2d 601, 603 (Ala. 1994)).   "Knowledge need not be proven directly but may be inferred from the facts of the case." *Klaber v. Elliott*, 533 So. 2d 576, 579 (Ala. 1988).

Alabama courts presume a defendant did not consciously engage in self-destructive behavior, that is behavior that would likely or probably cause harm not only to others but also to the defendant. *See Ex parte Essary*, 992 So. 2d at 12.  This presumption may be overcome by a showing the defendant's judgment was impaired (e.g., by the consumption of alcohol) or that the conduct at issue was "so inherently reckless that [a court] might otherwise impute to [the defendant] a depravity consistent with disregard of instincts of safety and self-preservation." *Id.*   "

'Inherently reckless' behavior, for example, might be driving in reverse on a major interstate, driving through an intersection at a very fast speed after ignoring a stop sign, or abruptly moving from the right lane into the left lane after seeing a video store on the left and deciding to stop and get a movie." *Craft*, 107 F. Supp. 3d at 1222 (internal quotation marks and citations omitted). "In each of these instances, something more than mere inattention, that is, an exacerbating circumstance, contributed to the accident." *Id.*

Having been afforded more than two years to conduct discovery, Stiefel has failed to come forward with evidence to permit his wantonness claim to proceed any further. There is no evidence Malone's judgment was impaired, as would be required to overcome the presumption Malone did not consciously engage in self-destructive behavior, and Malone's conduct was not so inherently reckless that "a depravity consistent with disregard of instincts of safety and self-preservation" could be imputed to him. The evidence may show Malone was inattentive or committed an error in judgment, but neither of these failings permits the inference Malone consciously acted in a manner likely to result in injury. *See Cheshire v. Putman*, 54 So. 3d 336, 345 (Ala. 2010) (error in judgment insufficient); *Vines v. Cook*, 2015 WL 8328675, at *4 (S.D. Ala. Dec. 8, 2015) (inattention insufficient) (collecting cases). Merely violating another driver's right-of-way is likewise insufficient. *Vines*, 2015 WL 8328675, at *4 (collecting cases). Alabama courts have found the

state of mind necessary to support a wantonness claim lacking under circumstances similar – even strikingly similar – to those demonstrated by the evidence in this case. *See Cheshire*, 54 So. 2d at 337-38, 344 (holding evidence driver who rear-ended vehicle that had stopped to make left turn (1) was familiar with road on which accident occurred, (2) knew vehicles attempting to make left turn often stopped in roadway to allow oncoming traffic to clear, (3) did not recall seeing vehicle in front of him before accident, and (4) knew it would take more time than usual to stop his truck because he was hauling a trailer but misjudged that time, merely established driver made an error in judgment); *Thedford v. Payne*, 813 So. 2d 905, 911 (Ala. Civ. App. 2001) (holding testimony of driver who rear-ended car he was not paying attention to what was in front of him supported no more than an inference of negligent conduct).

Morgan's opinion Malone breached the applicable standard of care by failing to maintain sufficient following distance relative to the pickup truck may support a conclusion Malone's conduct was negligent, but it does not support a conclusion Malone's conduct was wanton.  The mere failure to maintain a proper lookout, an operator error to which the mere failure to maintain sufficient following distance is analogous, does not constitute wanton conduct.  *See Allen v. Con-Way Truckload, Inc.*, 2012 WL 3775735, at *3 (N.D. Ala. Aug. 23, 2012 ("[T]he failure to maintain a proper lookout is negligence – wantonness requires more.").  Regardless, there is

no evidence Malone chose to follow the pickup truck at a distance he knew to be unsafe.

Finally, the undersigned notes that to the extent Malone was, in fact, trying to "time the turn" of the pickup truck, the conclusion that the record lacks evidence Malone acted in a manner likely to result in injury would be no different. *See Wilson v. Cuevas*, 420 So. 2d 62, 63-64 (Ala. 1982) (holding evidence driver was trying to "beat" traffic demonstrated no more than negligent conduct); *Ex parte Essary*, 992 So. 2d at 11-12 (holding evidence driver was trying to "beat the traffic" or "shoot the gap" between two vehicles demonstrated no more than an error in judgment).

For the foregoing reasons, Stiefel's wantonness claim against Malone fails. That failure means Stiefel's claims seeking to hold Greenwood liable for Malone's wantonness on theories of agency and *respondeat superior* also fail. *See Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 304-05 (Ala. 2010) ("[A]n employer could be liable for the intentional torts of its agent if the employer participated in, authored, or ratified the wrongful acts, but [] to prove such liability one must demonstrate, among other things, *the underlying tortious conduct of an offending employee*.") (internal quotation marks and punctuation omitted) (emphasis in original).  Accordingly, the motion for partial summary judgment (Doc. 78) is due to be granted in its entirety.

## VI.    Conclusion

For the foregoing reasons, the motion to strike Dr. Griffith's opinions (Doc. 74) is **GRANTED**; the motion to strike Morgan's opinions (Doc. 84) is **GRANTED IN PART** and **DENIED IN PART**, consistent with discussion above; the motion for partial summary judgment (Doc. 78) is **GRANTED**; and Stiefel's wantonness claim against Malone and claims seeking to hold Greenwood liable for Malone's wantonness on theories of agency and *respondeat superior* are **DISMISSED WITH PREJUDICE**.

The only remaining claims in this case are Stiefel's negligence claim against Malone and claims seeking to hold Greenwood liable for Malone's negligence on theories of agency and *respondeat superior*.  Stiefel, Malone, and Greenwood are **DIRECTED** to conduct further mediation with respect to these claims within 60 days from the entry date of this memorandum opinion and order.  Within 10 days following mediation, the mediator shall report to the undersigned only that a settlement was reached or mediation was conducted and no settlement was reached, whether each party acted in good faith to resolve the matter, and nothing more.

**DONE** this 8th day of February, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE